## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**Murphy**                                    **Case No. 6:18-cv-00834**

**Versus**                                    **Unassigned District Judge**

**City of Ville Platte et al**                **Magistrate Judge Carol B. Whitehurst**


## REPORT AND RECOMMENDATION

Before the Court, on referral by the district judge, is a Motion To Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted filed by Defendants, City of Ville Platte ("Ville Platte") and Chief Neal Lartigue ("Chief Lartigue"), Individually and in his Official Capacity as Chief of Police for Ville Platte [Rec. Doc. 5], Plaintiff, Natosha Murphy's ("Murphy"), Memorandum in Opposition [Rec. Doc. 7] and Defendants' Reply [Rec. Doc. 10]. For the reasons that follow, the Court recommends that the Motion be granted in part and denied in part.

## BACKGROUND

Plaintiff alleged in her complaint, *R. 1,* that she was hired as a patrol officer with the Ville Platte Police Department ("VPPD") on or about May 27, 2016. She worked under the supervision of defendant, Chief Lartigue. Plaintiff alleged that Chief Lartigue was responsible for "formulating and administering the policies and procedures, operations, and supervision of the Police Department of the City of Ville

Platte . . . and was responsible for establishing policies and procedures for law enforcement activities within the City of Ville Platte, as well as personnel policies for the Police Department of the City of Ville Platte." Plaintiff further alleged that "[s]oon after her employment began . . . [she] observed some officers of the Ville Platte Police Department involved in unlawful activities which [were] condoned, directed and encourage[d] by the Chief of Police for the City of Ville Platte." Plaintiff alleged that she was forced to leave the department as a result of intimidation by the Chief and/or employees of the department after she reported the alleged wrongdoings of the VPPD to the Federal Bureau of Investigations ("FBI") and the Louisiana State Police Department.

Plaintiff alleged several instances of unlawful activities which occurred from June 16, 2016 through June 22, 2017. The June 16, 2016 instance involved Plaintiff's response to an alarm call at a residence. Plaintiff alleged that upon arrival at the residence, she found a deceased individual who appeared to have passed away as a result of a drug overdose. She prepared and submitted a report of her response to the alarm call. Detective Jessica Laborde ("Laborde") headed the investigation of the death. Plaintiff alleged that Laborde instructed her to "change her report" and threatened her with suspension or termination if she did not comply. On another occasion regarding the same incident, Plaintiff alleged that Laborde "forced" her to witness coercive conduct toward a witness. Plaintiff alleged she immediately went

to Chief Lartigue and reported Laborde's conduct. She alleged that Chief Lartigue "humiliated [her] by saying that Laborde knows more than a Patrol Officer like her, and therefore, she should follow Laborde's orders."

Plaintiff further alleged that on May 4, 2017, she was dispatched to a residence for a complaint of an attempted rape. Plaintiff's investigation led her to believe that probable cause existed to arrest the suspect for felony rape. The officer assigned to the case, Detective Steven Deville ("Deville"), however, forbid her from making the arrest and ultimately charged the suspect with a misdemeanor. Plaintiff alleged Deville lessened the charge with Chief Lartigue's knowledge because the suspect's son was an officer with the VPPD. Thereafter the suspect's son pressured Plaintiff to destroy the original statement of his father and replace it with a falsified statement.

Following these instances, in May of 2017, Plaintiff alleged she contacted both the Louisiana State Police and the FBI, and met with the FBI, to report the alleged illegal activity taking place within the VPPD, and specifically the actions of Detectives Laborde and Deville. She alleged that following her report to the Louisiana State Police and the FBI, she was subjected to "increased retaliatory conduct perpetrated by members of the Police Department for the City of Ville Platte." Plaintiff stated, "[t]he retaliatory conduct was in direct response to her exercising her freedom of speech with regards to a matter of public concern," and

that the "retaliatory conduct was the continuation of a long-standing practice or custom of the City of Ville Platte."

Plaintiff alleged she was threatened with termination by Deville and forced to work thirty-eight straight hours on June 10th and 11th of 2017. On June 22, 2017, she alleged she was called in to the police department, and "was told to either turn in [her] badge and respectfully resign or she would be placed under investigation without pay until they found out who had contacted the Louisiana State Police and Federal Bureau of Investigations." As a result, she contends she resigned the same day. *Id. at p. 9.*

Plaintiff filed this action on June 22, 2018, against the City of Ville Platte and Chief Lartigue, individually and in his official capacity as the Chief of Police for the Ville Platte, alleging claims under the Louisiana Whistleblower Act, La. R.S. § 23:967, for violation of free speech protection under the First Amendment, for violation of the Fourteenth Amendment's Due Process Clause, a Monell claim against Ville Platte, for violation of the Louisiana Constitution's protection of freedom of expression, for violation of the Louisiana Constitution's protection of due process, for  violation of Louisiana Revised Statute § 40:2531 (rights of law enforcement officers), and under Louisiana Civil Code 2315 for intentional infliction of emotional distress.

4

## CONTENTIONS OF THE PARTIES

Defendants argue in their motion that Plaintiff fails to state a claim against either Ville Platte or Chief Lartigue (in either his individual or official capacity) because: (1) Plaintiff's retaliation claims under Louisiana's Whistleblower Statute, La. R.S. § 23:967, have prescribed; (2) Plaintiff has not set forth allegations to meet the requirements under § 23:967; (3) Plaintiff cannot establish that she spoke as a private citizen on a matter of public concern rather than as a public employee; (4) Plaintiff, as an at-will employee, has no claim for violation of a protected property interest in her employment under the Fourteenth Amendment; (5) Plaintiff has failed to allege a *Monell* claim related to any policy, custom or practice connected to an alleged constitutional injury; (6) because she cannot establish any constitutional violation under § 1983, Plaintiff fails to allege a violation of the freedom of expression clause and due process clause under the Louisiana constitution; (7)  La. R.S. § 40: 2531 does not create a private right of action; (8) Plaintiff's allegations fail to establish a claim for intentional infliction of emotional distress under La. C.C.P. 2015; (9) Plaintiff's claim against Chief Lartigue in his official capacity is against the City of Ville Platte; and (10) Plaintiff's allegations fail to state a claim against Chief Lartigue in his individual capacity.

Opposing Defendant's Motion, Plaintiff contends (1) her claims are not prescribed because she has alleged a continuing tort in which the alleged adverse

actions taken against her continued until she was constructively terminated; (2) her Complaint sets forth the allegations in compliance with La. R.S. § 23:967, including multiple incidents of unlawful activities, advising her employer of the violations and that she was subjected to reprisal as a result of engaging in one or more of the alleged protected activities; (3) her allegations establish the elements of a claim for First Amendment retaliation by a government employee; (4) as an at-will employee she is entitled to Fourteenth Amendment protection because she was deprived of a liberty interest without due process caused by the "stigma" that she was a whistleblower and violated the police officer "code of silence;" (5) she has stated a valid *Monell* claim as she alleged a long-standing practice or custom of Ville Platte to retaliate against individuals for engaging in lawful and constitutionally protected activities; (6) her claims under the Louisiana Constitution are analogous to those under the Constitution; (7) her claim under La. R.S. § 40:2531 should be dismissed as asserted by Defendants; (8) her allegation of being made to work thirty-eight hours straight is sufficient to state a claim for intentional infliction of emotional distress; (9) the claims against Chief Lartigue in his official capacity should be dismissed; (10) a supervisory official such as Chief Lartigue is liable under § 1983, individually, because he was the policy maker and/or co-policy maker for the police department and implemented unconstitutional policies alleged in the complaint.

## LEGAL STANDARD RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. U.S*., 281 F.3d 158, 161 (5th Cir. 2001). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678 (citing *Twombly*, at 556.) Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal* at 678. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *See Iqbal* at 678. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim*." City of Clinton, Ark. v. Pilgrim's Pride Corp*., 632 F.3d 148, 155 (5th Cir. 2010). A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327  (1989) ("[I]f as a matter

of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.").

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly* at 556. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert* at 413.[1] Even if a plaintiff fails to oppose a 12(b)(6) motion, the court still is obliged to assess the legal

---

[1] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)

sufficiency of the complaint. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc*., 702 F.3d 794, 806 (5th Cir. 2012).

## SUBSTANTIVE LAW FOR SECTION 1983 CLAIMS

"Section 1983 confers no substantive rights, but merely provides a remedy for the violation [by a person acting under color of state law,] of rights secured under the Constitution and laws of the United States." *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir.2008). Therefore, an underlying constitutional or statutory violation is a predicate to any theory of liability under § 1983. *Johnston v. Harris County Flood Control Dist*., 869 F.2d 1565, 1573 (5th Cir.1989). The plaintiff must establish in a § 1983 action that there has been: (1) a violation of rights secured by the Constitution or laws of the United States, (2) that was committed by a person acting under color of state law. *Southwestern Bell Telephone* at 260.

## ANALYSIS

### A. Louisiana Whistleblower Statute, La. R.S. § 23:967

#### 1.Whether or Not Plaintiff's Claims Have Prescribed

Defendants assert that Plaintiff's claims under the Louisiana Whistleblower Statute related to the June 16, 2016 incidents involving Laborde and the May 4, 2017 incident with Deville are all prescribed because she filed this action on June 22, 2018. *R. 1*. In their Reply, Defendants concede that Plaintiff's allegations pertaining

9

to the June 5, 10 and 11 complaints are related to the allegations pertaining to her June 22, 2017 resignation, and are therefore not time barred.[2]

In Louisiana, "[i]t is well established ... that wrongs committed by Louisiana state officials in violation of federal law," are governed by the one-year prescriptive period for delictual actions found in Louisiana Civil Code article 3492." *Alex v. St. John the Baptist Parish Sheriff's Office*, 2017 WL 5157538, at *3 (E.D.La., 2017) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)); *Jones v. Orleans Parish Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982). Under article 3492, a plaintiff's claim is untimely if it is filed more than one year after "the day injury or damage is sustained." La. Civ. Code art. 3492.

Plaintiff does not dispute that her claims are governed by the one-year prescriptive period for delictual actions, but rather asserts that they are subject to the continuing violation doctrine. The Fifth Circuit recently addressed the continuing violation doctrine in ongoing harassment/hostile work environment claims. *Heath v. Board of Supervisors for Southern University and Agricultural and Mechanical College,* 850 F.3d 731, 736 (5th Cir. 2017). In *Heath*, the court explained that the doctrine "provides that when a plaintiff alleges a hostile work environment claim, as long as an employee files her complaint while at least one act which comprises the

---

[2] The Court notes that in their Opposition Memorandum, Defendants initially asserted that "Plaintiff's allegations, as they pertain to the instances occurring on June 5, 10 and 11 or 2017, are prescribed and should be dismissed with prejudice at Plaintiff's sole cost." *R. 5-1, p. 7.*

hostile work environment claim is still timely, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability." *Id.* (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). "Hostile environment claims are 'continuing' because they involve repeated conduct, so the 'unlawful employment practice' cannot be said to occur on any particular day." *Id.* at 737. Such claims have been described as "the cumulative effect of a thousand cuts," such that while a plaintiff may not have a claim based on one single act, the overall effect of the conduct may be actionable. *Id.*

In *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 328 (5th Cir. 2009), the Fifth Circuit identified three limits on the continuing violation doctrine: "(1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.' " *Heath*, 850 F.3d at 738 (citing *Stewart* at 328). In *Heath*, the Fifth Circuit used this standard to determine whether a hostile work environment claim involved a continuing violation.[3]

---

[3] In *Heath*, the Fifth Circuit revisited and further clarified the three limitations on the applicability of the continuing violation theory. The Heath Court expressly rejected and overruled its pre-*National R.R. Passenger Corp. v. Morgan* decisions applying the continuing violation doctrine to the extent those decisions "held that the continuing violation

Applying the same standard here, Plaintiff's claim qualifies as a continuing violation. The acts forming the basis of her retaliation/intimidation claim are all related to her work as an officer of the VPPD and were carried out by fellow officers. Plaintiff alleges the behavior was ongoing throughout her employment and that it was known and condoned by Chief Lartigue, however, the Chief did nothing to correct the acts or to intervene. Finally, as in *Heath*, Defendant has pointed to no equitable consideration that should prevent the Court from considering the full scope of the continuing conduct.

### 2. Failure To State A Claim

Louisiana Revised Statute 23:967 ("Whistleblower Statute") provides:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1)     Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2)      Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3)     Objects to or refuses to participate in an employment act or practice that is in violation of law.

B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the

---

doctrine [did] not apply when an employee was or should have been aware earlier of a duty to assert her rights." *Id.* at 739.

plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1)     "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

(2)     "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.

D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

La. R. S. § 23:967.

In order to state a claim under the Louisiana Whistleblower Statute, the Louisiana Supreme Court has held that a plaintiff 'must establish that the employer engaged in workplace conduct constituting an actual violation of state law.' *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 158 So.3d 826 (La. 2015)." *Williams v. Hospital Service District of West Feliciana Parish, Louisiana*, 250 F.Supp.3d 90, 94 (M.D.La., 2017).

Defendants argue that Plaintiff has failed to set forth any allegations or references to any statute allegedly violated by the VPPD that she ultimately reported

13

to her supervisor, Chief Lartigue. They further argue that Plaintiff alleged only one instance that she reported to Chief Lartigue, the incident with Laborde, and she failed to show that the complained of conduct actually violated state law.

Plaintiff contends she has alleged all three of the protected activities in 23:967(A): (1) she contacted the FBI to disclose illegal activity taking place within the Police Department, *R. 1, ¶28*; (2) she met with an FBI agent and provided information to the FBI, *Id. at ¶29*; and (3) she reported to Chief Lartigue the incident with Laborde and refused to participate in the unlawful practice, *Id. at ¶19*. Plaintiff further argues that she alleged "multiple incidents of unlawful activities which were condoned, directed and encouraged by the Chief of Police." *R. 1, ¶13*. The alleged unlawful activities included: (1) "illegal searches, nepotism, coercion, intimidation"[4], *Id. at ¶14*; (2) she was "instructed to change her report" in a death investigation and pressured "to destroy [an] original statement of [a suspect] and replace it with a new one" which was false, *Id at ¶¶16 & 26*, which she characterizes as "injuring public records, and filing or maintaining false public records"[5]; (3) she witnessed Detective Laborde threaten a witness with incarceration which would result in his rape and beating as well with incarceration of his children and placing

---

[4]  While the "illegal searches" are a potential violation of the U. S. and Louisiana Constitutions, the Court is unaware of any violations of Louisiana law related to "nepotism, coercion or intimidation."

[5]  La. R.S. § 14 133 relates to filing a false public record, as a police report regarding the arrest of a person. *See, McKain v. Department of Police*, 72 So.3d 357, 361 (La.App. 4 Cir.,2011).

14

his grandchildren in foster care, if he did not agree to make a specific statement on tape, *Id. at ¶17*, which she states is the crime of "extortion;" and (4) that, despite her finding of probable cause, she was forbidden by Detective Deville from arresting the father of a fellow officer, *Id. at ¶¶ 22 & 24*, which she contends is "malfeasance in office."[6]

Defendants contend that the only incident Plaintiff alleged that she reported to Chief Lartigue is the one involving Laborde. As noted above, Plaintiff maintains that the allegations of that incident clearly outline the violation of extortion. La. R.S. §14:66 provides the following definition of extortion:

A. Extortion is the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description. Any one of the following kinds of threats shall be sufficient to constitute extortion:

B.

(1) A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him.

(2) A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime. An offer to participate in a theft prevention program pursuant to Code of Criminal Procedure Article 215 shall not constitute a violation of the provisions of this Paragraph.

---

[6] In *State v. Deville*, 644 So.2d 1117, 1120, (La.App. 4 Cir.,1994), a police officer defendant appealed his conviction on four (4) counts of malfeasance in office under La. R.S. 14:134. The appellant contended that no specific criminal statute imposes the affirmative duty the malfeasance statute requires. In upholding the convictions, the court stated, "the malfeasance statute requires that the offender be acting in his official capacity and engaged in the performance of a duty which is required by law, in order to support conviction. The jurisprudence indicates that prosecution for malfeasance is reserved for those cases in which a public official has blatantly abused the authority of his office and violates the public trust by his direct, personal acts or failure to act."

(3) A threat to expose or impute any deformity or disgrace to the individual threatened or to any member of his family or to any other person held dear to him.

(4) A threat to expose any secret affecting the individual threatened or any member of his family or any other person held dear to him.

(5) A threat to cause harm as retribution for participation in any legislative hearing or proceeding, administrative proceeding, or in any other legal action.

(6) A threat to do any other harm.

Based on the "illegal activities" alleged in the complaint and analyzed above, the Court finds that Plaintiff has sufficiently pled that her employer engaged in workplace conduct constituting an actual violation(s) of state law with the exception of her allegations of nepotism, coercion, and intimidation. *See e.g. Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir.2005) (Fed.R.Civ.P. 8(a)(2) sets out a "low bar" to evaluate the sufficiency of a claim, requiring only that a plaintiff's pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

As to advising her employer of the alleged unlawful activities, Defendants concede that Plaintiff reported to Chief Lartigue the incident with Laborde involving extortion.  Moreover, Plaintiff states in her brief that she "made a good faith effort to advise her employer of the violation(s)." In support, she cites Paragraphs 13 and 23 in her Complaint. In Paragraph 23 Plaintiff states that the "unlawful activities

16

[were] condoned, directed and encourage [sic] by the Chief." She also states in Paragraph 23 that she was "forbidden from contacting the Chief" about the incident with Laborde. In her Opposition, Plaintiff expounds her inability to notify Chief Lartigue of the illegal violations, contending that she was prevented from "reporting up the chain of command" without permission because she would be internally disciplined. She contends, however, that she continued to report the misconduct to her "employer" ("human resources director or staff, a councilman or council woman, the mayor of Ville Platte or the Chief of Police") through chain of command. The Court finds that the allegations in Plaintiff's complaint are sufficient to establish that she advised her employer of the alleged unlawful activities.

Lastly, Defendants state that Plaintiff "must assert she was terminated as a result of her threat to disclose, or because of the disclosure of the prohibited practice. They argue that Plaintiff's claim that she was compelled to resign fails to meet the requirement for "constructive discharge." In response, Plaintiff asserts that the statute requires that she was subjected to some form of "reprisal" such as firing, layoff, loss of benefits, or any discriminatory action the Court finds was taken as a result of engaging in one or more of the protected activities. Plaintiff's allegations provide that she was threatened with suspension without pay or termination, *R. 1, ¶¶ 16 & 34,* humiliated, *Id. at ¶ 20,* forbidden from performing her essential job functions, *Id. at ¶ 22,* forbidden from contacting Chief Lartigue, *Id. at ¶ 23,* required

to work for thirty-eight hours straight absent a dire emergency, *Id. at ¶25,* and as a result of being the subject of retaliation and difficult and unpleasant working conditions she was ultimately constructively terminated, *Id. at ¶38.* The Court finds that these factual allegations of "discriminatory actions" satisfy the "reprisal" element for a plausible claim for relief under § 23:967.

### 3. First Amendment Claim

Plaintiff alleged that Defendants violated her First Amendment rights by retaliating against her for her protected speech of complaining of discriminatory behavior within VPPD. She alleged she suffered an adverse employment action when Defendants retaliated against her for the protected speech by constructively discharging her.

Defendants argue that Plaintiff's statements were made pursuant to her official duties on a matter of private concern, and thus not protected under the First Amendment. For a public employee to prevail on a First Amendment speech-retaliation claim, the employee must establish:

> 1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct.

*Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016). "Whether the speech at issue is on a matter of public concern is a question of law that must be determined

by the court." *Salge v. Edna Indep. Sch. Dist*., 411 F.3d 178, 184 (5th Cir.2005). To determine whether a public employee spoke as a citizen on a matter of public concern the Court must focus on the role the speaker occupied when speaking and whether the speech was part of, or closely related to, her job duties. *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir.2008). Even if an employee speaks on a matter of public concern, his speech is not protected unless his interest in expressing himself outweighs the government's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed*., 391 U.S. 563, 568 (1968).

In her complaint, Plaintiff alleged that in May of 2017, she contacted the FBI and the Louisiana State Police regarding the "illegal activity" which allegedly occurred during her employment with VPPD. *R. 1, ¶¶ 27,28,29*. She further alleged that her contact with these agencies constituted "exercising her freedom of speech with regards to a matter of public concern." Even though she authored the letter to the FBI anonymously out of fear of retaliation for speaking for the illegal activities," her action resulted in "increased retaliatory conduct perpetrated by members of VPPD." *Id. at ¶¶ 30, 31, 34, 35*.

Based on the allegations set out above, Plaintiff has pleaded a plausible First Amendment free-speech claim based on harassment and humiliation in retaliation for her expressive conduct.

*4. Fourteenth Amendment Claim*

Defendants assert that as an at-will employee, Plaintiff has no claim for violation of a protected property interest in her employment under the Fourteenth Amendment. Plaintiff argues that as an unlawfully discharged employee she is entitled to Fourteenth Amendment protection in an instance such as the one in this case.

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." To maintain an action for a violation of due process under 42 U.S.C. § 1983, Plaintiff must demonstrate that she had a property interest in her employment within the purview of the Fourteenth Amendment, and that she was intentionally or recklessly deprived of such an interest under color of state law. "Property interests are not created by the Constitution, but arise from independent sources such as state law, rules, or understandings that secure certain benefits and support claims of entitlement to such benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

The case law on procedural due process recognizes two types of discharge: actual and constructive. Constructive discharge occurs when a state employee is "forced to resign by unbearable working conditions." *See Fowler v. Carrollton Public Library*, 799 F.2d 976, 980 (5th Cir.1986). In other words, "[a]n employer's activities may be deemed to amount to a constructive discharge [ ] if 'the employer

20

made conditions so intolerable that the employee reasonably felt compelled to resign.' " *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985); cf. *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir.1992) (Discharge may be constructive under the ADEA if a reasonable person in employee's position would have felt compelled to resign under the circumstances.). Other circuits have adopted similar definitions of constructive discharge under the due process clause. *See, e.g., Parrett v. City of Cornersville*, 737 F.2d 690, 694 (7th Cir.1984) (forced inaction made employee so miserable that he was forced to quit).

Additionally, for constructive discharge to constitute a due process violation under the Fourteenth Amendment, there must be evidence that the state employer's actions were motivated by a desire to force the employee to sacrifice his or her due process protection. *Fowler*, 799 F.2d at 980. Thus, "a due process violation exists where an employee is constructively discharged by actions of the employer intended to force the employee to sacrifice his [or her] due process protection by voluntarily resigning." *Rathjen v. Litchfield*, 878 F.2d 836, 838 (5th Cir.1989); *Findeisen v. North East Ind. Sch. Dist.*, 749 F.2d 234 (1984) (teacher resigned under threat of discharge and employer intended to avoid civil service hearing process).

Plaintiffs' Fourteenth Amendment claims are asserted in paragraphs 29, 32, 48, 50, 64(b), (c), and (d) of the complaint. *R. 1*. A public employee may be deprived of a liberty interest if she was terminated for a reason that was (1) false, (2)

publicized, and (3) stigmatizing to her standing or reputation in her community or if terminated for a reason that was (1) false and (2) had a stigmatizing effect such that (3) she was denied other employment opportunities as a result. In this case, Plaintiff alleged she "was told to either turn in my badge and respectfully resign or she would be placed under investigation without pay until they found out who had contacted the Louisiana State Police and FBI." *R. 1, □ 37.* She further alleged that as a result of the threat she resigned on the same day. *Id.* She alleged that she was deprived of a liberty interest without due process caused by the "stigma" of information being circulated by members of the VPPD that she was "a whistleblower" and had violated the police officer "code of silence" *Id. at ¶39.* She alleges these statements coupled with false information surrounding her employment with the VPPD has resulted in her being denied other employment opportunities in law enforcement. *Id.*

Taking the allegations stated above as true, Plaintiff has pleaded a plausible Fourteenth Amendment claim for deprivation of a liberty interest without due process in that her employment conditions were so intolerable that she reasonably felt compelled to resign.

*5. Monell Claim*

Defendants assert that Plaintiff's alleged *Monell* claim against Ville Platte for Chief Lartigue's policy or custom of retaliating against employees who engaged in lawful and constitutionally protected activities should be dismissed. *See Monell v.*

22

*New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). They contend that Plaintiff's complaint puts forth no statement of particularized facts of any "custom" or "policy" of the City or Chief Lartigue.

"A municipality is a 'person' subject to suit under Section 1983. A local government entity may be sued if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.

The elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis. A municipality may not be subject to liability merely for employing a tortfeasor. Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010).

The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality. *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748–

749 (5th Cir.2005). A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (*en banc*). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir.1984) (*en banc*). The Fifth Circuit has found that a city impliedly delegated its policymaking authority to the chief of police where "the chief of police [was] the sole official responsible for internal police policy" and was authorized to speak on the city's behalf through its General Orders. *See Robinson v. City of Garland, Texas*, 2016 WL 7396048, at *9 (N.D. Tex. Aug. 17, 2016) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010)).

In her complaint, Plaintiff alleged that Chief Lartigue "was the policy maker and/or co-policy maker" for Ville Platte and "had the authority to discipline, hire and fire employee of the VPPD. *R. 1, ¶¶ 8, 9.* She further alleged Chief Lartigue, was the "final policy maker" for the VPPD, "was responsible for establishing policies and procedures for law enforcement activities" and was "responsible for formulating and administering the policies, procedures, operations, and supervision of the [VPPD] its divisions, employees, agents, assigns, and facilities." *Id. at ¶ 10.*

Defendants do not dispute Plaintiff's contention that Chief Lartigue was the final policy maker for Ville Platte. Rather, they contend that Plaintiff has failed to plead a practice or custom "so persistent and widespread" as to practically have the

force of an official practice or of law. They further contend that Plaintiff must do more than rely on the incident that gave rise to her injury.

Plaintiffs' complaint, which the Court must accept as true at this stage of the proceedings, alleges Chief Lartugue condoned and engaged in *multiple* unlawful activities by her fellow officers and the Chief himself for over a year during her employment. Plaintiff alleged that there was a persistent, widespread practice of retaliating against individuals for engaging in lawful and constitutionally protected activities which, although not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represented municipal policy. *Id. at ¶¶ 30, 31, 32.*

The Court finds that Plaintiff has plead facts, which if true, raise a plausible right to relief under 42 U.S.C. § 1983 against the City of Ville Platte for the official capacity acts of its Police Chief. While she may not ultimately prevail, she has alleged enough factual content to nudge her claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

*6. State Law Claims*

For the reasons set forth in the foregoing as to Plaintiff's § 1983 claims under the First and Fourteenth Amendments of the United States Constitution, Plaintiff has also satisfied the pleadings requirements necessary to state causes of action under the Louisiana Constitution for deprivation of freedom expression, due process and

25

liberty interest. *See Progressive Sec. Ins. Co. v. Foster*, 711 So.2d 675, 688 (La.1998).

Plaintiff also brings a state law claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co*., 585 So. 2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and ... be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id*.

Plaintiff alleged in her complaint that she suffered "mental anguish and emotional distress" as a result of "adverse employment action" *R. 1 ¶45*. Specifically, in her Opposition, Plaintiff supports her claim as follows, "[c]ertainly any reasonable person would agree that being made to work thirty-eight hours straight, *Id. at ¶35,* even during periods of a natural disaster or urgency would be

extreme and outrageous especially when carried out for retaliatory purposes and to bring about the constructive discharge of Murphy." Plaintiff also refers generally to her other allegations which the Court perceives to be the allegations of humiliation by Chief Lartigue, allegations of other officers involved in "illegal activities" such as extortion and falsifying reports, which were known and condoned by Chief Lartigue, and allegations of being told to either turn in her badge and resign or be placed under investigation without pay when she refused to state that she had informed the State Police and FBI of the Police Department's actions.

Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury. *Perrone v. Rogers*, 234 So.3d 153, 157 (La.App. 1 Cir., 2017) (citing *Nicholas v. Allstate Ins. Co*., 765 So. 2d 1017, 1024-1025 (La. 2000) (collecting cases). "[I]n a workplace setting," Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas*, 765 So. 2d at 1026 ("The distress suffered by the employee must be more than a reasonable person could be expected to endure. Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry.").

Due to this limitation, plaintiffs bringing workplace emotional distress claims have tended to succeed only in exceptional cases, such as where a plaintiff has demonstrated a long pattern of severe abuse that has culminated in a threat to the employee's personal safety. *See, e.g., Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992) (finding extreme and outrageous conduct where an employee was subjected to constant improper sexual comments and advances, was threatened with physical violence, and was almost run over by a forklift), *Walters v. Rubicon, Inc.*, 706 So. 2d 503 (La. App. 1 Cir. 1997) (finding extreme and outrageous conduct where supervisors constantly verbally abused plaintiff, ordered plaintiff to ignore company policy in possible violation of law, harassed plaintiff with phone calls, endangered plaintiff and plaintiff's son in traffic, and gestured that plaintiff would be shot).

As a Louisiana court has explained, "[o]utrageous conduct is a nebulous concept, as it does not refer to any specific type of conduct." *Perrone*, 234 So.3d at 158. In order to determine whether conduct is extreme and outrageous, the court must ask whether, as a matter of law, the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209.

Based on the above jurisprudence, the Court cannot find that Plaintiff's allegations constitute the type of "extreme and outrageous" behavior necessary to

sustain a claim for intentional infliction of emotional distress. *See Id*. Courts applying Louisiana law have dismissed allegations asserting similar types of workplace conduct. *See Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 354 (E.D. La. 2016) (former police officer's allegations that police department disciplined him, denied him a promotion, demeaned him to the public, and "unnecessarily criticiz[ed] him" did not state claim for intentional infliction of emotional distress); *Stewart v. Parish of Jefferson*, 668 So. 2d 1292, 1294 (La. App. 3 Cir. 1996) (affirming trial judge's dismissal of plaintiff's claim even though a supervisor maintained two-year's harassment in which he questioned the plaintiff's personal life, increased plaintiff's workload, and pressured plaintiff to take a demotion that ultimately led to his termination); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049 (La.App. 3 Cir.) (holding that even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid, and fat), commented about the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct); *Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir.) (holding that employer may call upon an employee to do more than others, use special review on particular employees and not others to downgrade performance, institute long term plan to move younger persons into sales and management positions without engaging in extreme and outrageous conduct).

29

The Court finds that Plaintiff has failed to allege a plausible claim for Louisiana intentional infliction of emotional distress.

### 7. *Supervisory Liability of Chief Lartique in his Individual Capacity*

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions, "The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir.2002). Further, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983).

Here, Plaintiff alleged that Chief Lartigue "was responsible for establishing policies and procedures for law enforcement activities" which causally resulted in constitutional injuries. *Id. at ¶ 10.* Supervisory officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Thus, a supervisory official, such as Chief Lartigue, is individually liable under 42 U.S.C. § 1983 when "(1) he affirmatively participates in the acts that cause the unconstitutional deprivation, or (2) he implements unconstitutional policies that causally result in constitutional injury." *Gates v. Texas Dep't of Prot. & Reg. Servs*., 537 F.3d 404, 435 (5th Cir. 2008). This

includes individual acts of promulgating and oversight of policies that cause constitutional harm. *Hinojosa v. Livingston*, 807 F.3d 657, 668- 669 (5th Cir. 2015).

As discussed in the *Monell* claim analysis, Plaintiff alleged and Defendants do not dispute, that Chief Lartigue was the policy maker and/or co-policy maker for the VPPD. *R. 1, ¶8*. Moreover, Plaintiff alleged that Chief Lartigue personally implemented unconstitutional policies including taking retaliatory action against her which resulted in the hostile work environment ultimately leading to her constructive discharge. Defendants contend that Plaintiff's allegations were solely as to Chief Lartigue's action in his official capacity and he cannot be held liable for the actions of his subordinates, Laborde and Deville. *R. 5-1*. The Court however, finds that Plaintiff has sufficiently alleged facts which establish a causal connection between Chief Lartigue's supervisory conduct and the alleged constitutional violation, thus creating a plausible claim against Lartigue individually.

In their Motion, Defendants briefly reference the defense of qualified immunity as to Chief Lartigue, spending the entirety of one paragraph on the argument. *R. 5-1, pp. 20-21*. The first three sentences in the paragraph are general rules for qualified immunity with citations to three cases, but no in-depth discussion of the cases cited and no comparison of the facts of this case to the facts of similar cases in which a qualified immunity defense was asserted. *Id. at p. 20.* The next, and

last, three sentences contain what Defendants presumably thought constituted an

analysis of the issue:

> Plaintiff does not allege that Chief Lartigue did anything other than
> perform discretionary functions in his official capacity. After all,
> plaintiff was not fired; she resigned on her own accord. Plaintiff's
> Complaint for Damages fails to state any claim against Chief Lartigue
> that overcomes his entitlement to qualified immunity, despite her claim
> that his response to her complaint was humiliating.

*Id. at pp. 20-21.*

Defendants have not demonstrated that they are entitled to qualified immunity

as to any of the remaining claims. Furthermore, even had Defendants adequately

asserted this defense, the allegations in the complaint are sufficient for the claims to

survive Rule 12(b)(6) and qualified immunity scrutiny at this stage of the

proceedings. *See e.g. Babineaux v. Garber*, 2018 WL 4938851, at *6 (W.D.La.,

2018) (J. Hicks). Therefore, Defendants' motion should be denied to the extent it

seeks an initial determination that they are entitled to qualified immunity.

*8. Plaintiff's Claims: La. R.S. § 40:2531; Chief Lartigue in His Official Capacity*

As Plaintiff does not dispute that her claims under La. R.S. § 40:2531 and

against Chief Lartigue in his official capacity should be dismissed the Court need

not address these claims and will recommend that they be dismissed.

Finally, Defendants also contend in their Motion that they are entitled to

recover attorney's fees. *R. 5-1, p.1*. In *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir.

2001), the Fifth Circuit stated that "attorney's fees for prevailing defendants are

presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit." *Id*. Such a showing has not been made here, thus, Defendants' request should be denied.

## CONCLUSION

Accordingly, **IT IS RECOMMENDED** that the Motion To Dismiss For Failure to State a Claim filed by Defendants, City of Ville Platte and Chief Neal Lartigue, Individually and in his Official Capacity as Chief of Police for City of Ville Platte [Rec. Doc. 5] be **GRANTED IN PART AND DENIED IN PART**, in that the Motion as to Plaintiff's claims under La. R.S. § 40:2531; Plaintiff's claims against Chief Lartigue in his official capacity; and Plaintiff's state law claim for intentional infliction of emotional distress be GRANTED, and (2) the Motion be DENIED in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** this 12th day of December, 2018 in Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE